[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10676

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ENODE JUNIOR DUVERCY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60325-RNS-2

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Enode Junior Duvercy challenges his convictions for conspiracy to commit sex trafficking, sex trafficking of a minor, and production of child pornography, all on the grounds that the evidence presented by the government at trial was insufficient to support each of those convictions.

## I.

When the defendant has challenged the sufficiency of the evidence by an appropriate motion for judgment of acquittal, we review *de novo* whether there is sufficient evidence to support a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict. *Id.* We assume the jury made all credibility choices in support of the verdict. *Id.* at 1285. The evidence will be sufficient if a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt. *Id.* at 1284-85. Accordingly, it is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty. *Id.* at 1285. This test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence,

"reasonable inferences, not mere speculation, must support the conviction." *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015) (quotation marks omitted). Credibility questions are the sole province of the jury. *United States v. Schmitz*, 634 F.3d 1247, 1269 (11th Cir. 2011).

To support a conviction for sex trafficking of a minor, the government must prove that the defendant: (1) knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means the victim; (2) knew, or recklessly disregarded the fact, that the victim was a minor and would be caused to engage in a commercial sex act; and (3) his acts were in or affected interstate or foreign commerce. *United States v. Gatlin*, 90 F.4th 1050, 1060 (11th Cir. 2024).

Moreover, to convict a defendant of conspiracy to commit sex trafficking, the government must prove that (1) two or more people agreed to violate 18 U.S.C. § 1591, (2) the defendant knew of that conspiratorial goal, and (3) the defendant voluntarily assisted in accomplishing that goal. *United States v. Mozie*, 752 F.3d 1271, 1287 (11th Cir. 2014). An agreement can be inferred from conduct and the government need not prove that a defendant knew every detail or participated in every stage of the conspiracy. *Id.*; *see also United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

Here, the district court did not err in denying Duvercy's motions for a judgment of acquittal on Counts One and Two because the government presented sufficient evidence of his intent and knowing participation in the sex trafficking of a minor and in the

conspiracy with Adams to do so. J.H. testified that, while lying in Bo's room and "coming down off a drug," she saw Duvercy "slip Bo some money, . . . then everyone left the room" and Duvercy had sex with J.H. She testified that she believed Duvercy was "testing the product" before buying her from Bo. She testified that, afterwards, Duvercy took her back to Room 15 where she met Adams, and both Duvercy and Adams told her that she could stay with them if she made $90 a day and participated in commercial sex. She testified that she told Duvercy that she was 19 years old when she was really 16. Thereafter, she testified that Duvercy would supply her with drugs to keep her awake for dates and occasionally drive her to "out-calls" in his vehicle and then wait for her in his vehicle until she was done. This evidence supports the jury's conclusion that Duvercy knew, or recklessly disregarded the fact, that J.H. was a minor, and, at a minimum, that he knowingly harbored and transported J.H. for purposes of causing her to engage in commercial sex. *Gatlin*, 90 F.4th at 1060; *Jiminez*, 564 F.3d at 1284-85. The fact that the government relied almost exclusively on the trial testimony of J.H. to support the conspiracy charge is of little consequence; the jury heard evidence from J.H. as to why her statements to police about the extent of Duvercy's involvement in the business were inconsistent with portions of her testimony, as well as evidence from Detective Graber as to the initially uncooperative nature of minor sex trafficking victims, and based on that evidence, chose to find J.H.'s testimony—albeit inconsistent with some of her statements to police—credible. *Schmitz*, 634 F.3d at 1269.

The same evidence supports the jury's conclusion that Duvercy agreed to traffic J.H. with Adams, and voluntarily assisted in accomplishing that conspiratorial goal. *Mozie*, 752 F.3d at 1287. Additionally, both Duvercy and Adams paid for the motel room in which the two of them lived and worked with J.H. The fact that Duvercy did not play as large a role in the business as Adams is inapposite. *See Mozie*, 752 F.3d at 1287; *see also Jones*, 913 F.2d at 1557. Duvercy's argument that he had nothing to do with the business based, in part, on the argument overheard by J.H. in which Duvercy told Adams that she "shouldn't be doing this" with J.H. actually serves as further evidence that, while he may have had moral qualms about the situation, he knew of the conspiratorial goal and nevertheless helped Adams accomplish that goal. *Mozie*, 752 F.3d at 1287.

## II.

To sustain a conviction for the production of child pornography under 18 U.S.C. § 2251(a), the government must prove that the defendant (1) employed, used, persuaded, induced, enticed, or coerced any minor (2) to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, and (3) that visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2251(a); *United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012). The government does not have to

prove that the defendant was single-minded in his purpose. *Lebowitz*, 676 F.3d at 1013.

"Sexually explicit conduct" is defined as actual or simulated "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (iv) lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A).

Here, J.H. testified that the video was of her performing oral sex upon Adams. Thus, it was "actual" "sexual intercourse, including . . . oral-genital." She also testified that Duvercy induced Adams and her to engage in such behavior and then recorded it. Because she was not in a sexual relationship with either Adams or Duvercy and they slept in a separate bed from her, the jury could have reasonably inferred that Duvercy induced her to perform the sex act so that he would record it.[1] Therefore, there was sufficient evidence to convict Duvercy of violating § 2251.

For the foregoing reasons, the judgment of the district court denying the motions of acquittal is

AFFIRMED.

---

[1] Duvercy does not challenge the third prong of the § 2251 test.